(No. 41387.–_____)

The People of the State of Illinois, Appellee, *vs.* Jimmie M. Adkins, Appellant.

*Opinion filed November 22, 1968.*

John Unger, Public Defender, of Danville, for appellant.

William G. Clark, Attorney General, of Springfield, and John P. O'Rourke, State's Attorney, of Danville, (Arthur J. Inman, Assistant State's Attorney, and Fred G. Leach, Assistant Attorney General, of counsel,) for the People.

Mr. Justice Ward delivered the opinion of the court:

Two indictments returned on January 16, 1968, in the

circuit court of Vermilion County charged Jimmie M. Adkins, the defendant, with burglaries and grand thefts. Represented by the public defender, Adkins pleaded guilty and made application for probation. It was stipulated that the hearing to be had on the question of probation was to be considered also as a hearing on the question of aggravation or mitigation of the offenses. The trial court on March 18, 1968, after a hearing and a review of the probation officer's report denied the application for probation and sentenced the defendant to a term of from one to three years. Several days later the public defender filed a post-conviction petition in behalf of Adkins which alleged a substantial denial of his rights under the United States and Illinois constitutions. The trial court allowed the People's motion to dismiss the petition and directed the public defender to continue his representation of Adkins upon the appeal to this court.

The presentence report furnished the trial court by the probation office was a typical report of this kind, which contained pertinent background material concerning the defendant, including his family history and his work record. Fingerprint sheets from the Federal Bureau of Investigation and the Illinois Department of Public Safety recording Adkin's involvements with law enforcement authorities were attached and the report noted that he had been previously placed on probation following another conviction. It related that he had admitted other thefts, with which he was not charged, to officers while in custody. The report did not recommend probation. A copy of. the report was given the defendant and when he was called to testify at the hearing by his counsel he related that the report was inaccurate in stating he had been expelled from school. It was inaccurate, too, he said in stating that his family had moved from Illinois to Indiana because of his problems. He had confessed to offenses not charged in the indictments here, he testified, because officers had told him it

would "make it pretty easy" on him. The State's Attorney in his cross-examination of the defendant brought out, over the objection of the public defender, some of the details of the offenses charged in the indictments to which he had pleaded guilty. The prosecutor also, over objection, after ascertaining that Adkins had reviewed the Federal Bureau of Investigation's criminal record sheet attached to the probation officer's report, in effect, had its accuracy verified by the appellant.

The defendant states that basically a single question is involved, and that concerns the "quality" of evidence required in a presentence hearing. More precisely, the question presented is whether in determining the punishment to be imposed following conviction, the information secured by the trial court to aid in that determination must conform to legal standards required of evidence introduced in a trial where the issue is the guilt of the accused. It is contended that the presentencing hearing here, in that it did not conform to such standards, denied the defendant the right to confront and examine witnesses against him in violation of rights assured by sections 2 and 9 of article II of the constitution of Illinois and the 6th and 14th amendments to the constitution of the United States.

Distinctions have traditionally been drawn between the evidential procedure in a trial to determine the question of the guilt of the accused and the procedure to determine appropriate punishment for the convicted. In *Williams* v. *New York*, 337 U.S. 241, 93 L. Ed. 1337, the trial court, in stating reasons for imposing the death penalty, remarked that it had considered not only the evidence on which a jury had convicted the defendant but had viewed this evidence in the light of additional information obtained through the court's probation department and "through other sources." A contention, as that of the defendant here, was made that due process was denied. The Supreme Court in holding that the sentencing procedure did not vio-

late due process said: "Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law. * * * Rules of evidence have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged. * * * A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." (337 U.S. 241, 246, 247, 93 L. Ed. 1337, 1341, 1342.) Very recently the court in *Specht* v. *Patterson,* 386 U.S. 605, 18 L. Ed. 2d 326, announced its continuing adherence to *Williams.*

In Illinois, too, we have long held that the judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials (*People* v. *Crews,* 38 Ill.2d 331), "the court is not confined to the

evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and, as was said in *People* v. *Popescue,* [345 Ill. 142], the judge should know something of the life, family, occupation and record of the person about to be sentenced." *People* v. *McWilliams,* 348 Ill. 333 at 336. See also *People* v. *Popescue,* 345 Ill. 142; *People* v. *Mann,* 27 Ill.2d 135; Ill. Rev. Stat. 1967, chap. 38, par. 1—7(g).

Though we have addressed ourselves to the broad question posed by the appellant in his brief because it is a recurrent one, an examination of the record discloses that the only objection made by him to the trial court was that the State's Attorney's cross-examination exceeded the scope of the appellant's direct examination. As stated, the State's Attorney brought out some of the details of the crimes to which the appellant had pleaded guilty and had him verify notations appearing on his criminal fingerprints records. The trial court did not abuse discretion in permitting the State's Attorney to have the appellant, who had pleaded guilty to the crimes and who was requesting probation, advise the court of some of the details of the crimes. Nor was it improper for the People to inquire whether any error appeared in his fingerprint-record notations and to have him verify the record for the trial court.

The latitude permitted in the cross-examination of witnesses at trial, including one who is a defendant, is a matter within the discretion of the trial court and its rulings in this

regard will not be upset on review unless there has been a plain abuse of discretion. (*People* v. *Provo*, 409 Ill. 63.) Obviously, no more restrictive rule should be imposed on a trial court when the guilt of the defendant is no longer an issue and the trial court is seeking all proper information to assist it in determining the question of punishment. The court had the duty and right to ascertain the information concerned and under the circumstances it did not abuse discretion in permitting this cross-examination.

Finally, it is to be observed that the appellant did not and does not challenge the accuracy of the materials appearing in the probation officer's report, with the minor exception we have described. We note, too, the trial court's comment that it was not considering the appellant's confession of offenses with which he was not charged and that it believed without reference to the report that the appellant was not entitled to probation.

The judgment of the circuit court of Vermilion County is affirmed.