THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE A. WALKER, JR., Defendant-Appellant.

Fifth District No. 81—357

Opinion filed March 30, 1983.

1076

Randy E. Blue and Richard J. Bennett, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Stephen E. Norris and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant pleaded guilty to various offenses including murder and was sentenced *inter alia* to the death penalty. On appeal to the Illinois Supreme Court the cause was reversed and remanded for a new sentence on the murder count. On remand the circuit court of St. Clair County imposed an 80-year sentence for murder, to be served consecutively to the other sentences imposed, the greatest of which was 60 years. Defendant appeals the murder sentence.

Defendant was jointly indicted with Paul Bainter for offenses occurring at the State Park Cafe in Caseyville, Illinois, on May 20, 1978. On October 2, 1978, defendant pleaded guilty to murder, attempted murder (four counts), armed robbery, conspiracy to commit armed robbery, and armed violence. The State had agreed to recommend concurrent sentences of 60 years for murder, 15 years for each count of attempted murder, and 30 years for armed robbery and armed violence; however, before a sentencing hearing could be held, defendant was permitted to withdraw his guilty plea on his own motion.

On February 6, 1979, defendant again pleaded guilty to all eight

counts. The State's Attorney informed the court that the State would seek the death penalty. Defendant was admonished *inter alia* concerning the possible sentences and the possibility of consecutive sentencing on the murder charge if sentenced to a term of years for murder. The State's Attorney recited the factual basis for the pleas, as follows:

Armed with a .30-caliber carbine rifle called an "Enforcer" and wearing a hood partially covering his face, defendant entered the State Park Cafe and announced a robbery. He fired two shots into the floor near the patrons. Defendant ordered the patrons to place their money on a table and move into the kitchen. Defendant fired two shots at Elsie Wallace, who was killed. Defendant followed the remaining patrons into the kitchen and again demanded money. Someone responded that he already had it. Defendant fired the rifle at least eight more times. James Outland was shot in the face, Carol Alier in the right breast, George Delisle in the leg and Terry Wallace in the arm. Defendant fled, leaving behind the money taken from the patrons and the cash register.

Defendant and Bainter were arrested in Texas. Defendant told police that he recalled announcing the holdup but did not recall shooting anyone. This statement also mentioned that defendant and Bainter had drunk beer and taken mescaline prior to the offenses.

Defendant's death penalty hearing was by the circuit court sitting without a jury. The State's evidence included testimony by the four persons defendant had shot in the State Park Cafe kitchen. These witnesses testified in detail concerning the events in the kitchen. Defendant's wife and Bainter testified regarding defendant's and Bainter's drinking prior to the offenses in question. Bainter also testified concerning the prior drug usage and defendant's involvement in an unrelated burglary. Dr. Syed Raza, a psychiatrist, testified that defendant had told him that he drank two or three cases of beer and took hallucinogenic drugs prior to the offenses and that based on these facts and his examination of defendant, defendant's mental faculties would have been "severely" affected. State Agent Jimmy Bivens testified that he had not found any arrests or convictions of defendant in his check with the Illinois Crime Bureau. The State cross-examined Bivens concerning the arrest of a person named Amos Earl Walker in St. Louis County in 1975.

The court sentenced defendant to death for murder, 60 years for each count of attempted murder, 60 years for armed robbery, 30 years for armed violence and three years for conspiracy to commit armed robbery. The court did not indicate whether the sentences were to be

served concurrently or consecutively.

On review by the supreme court (*People v. Walker* (1981), 84 Ill. 2d 512, 419 N.E.2d 1167), that court vacated the conspiracy conviction, remanded for resentencing on the murder, and affirmed in all other respects. With respect to the murder count, the court stated that "the cause is remanded to the circuit court for the imposition of a sentence not greater than 80 years in the penitentiary." 84 Ill. 2d 512, 526, 419 N.E.2d 1167, 1176.

Defendant was resentenced by the same sentencing court on June 26, 1981. Both parties elected to rely on the evidence adduced at the death penalty hearing. The State recommended a consecutive sentence of 80 years, and the court imposed that sentence.

■■ ■ First, defendant argues that the State's consecutive sentence recommendation punished defendant for the lawful exercise of his rights, *i.e.*, appealing his death sentence. The courts have recognized that the imposition of a penalty upon a defendant for having successfully invoked a right afforded by law would be a violation of due process of law. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072; *Blackledge v. Perry* (1974), 417 U.S. 21, 40 L. Ed. 2d 628, 94 S. Ct. 2098.) Defendant urges that this principle prevents consecutive sentencing in the instant case. We disagree. The vindictiveness principles were held to have been triggered in the case at bar when the prosecutor, without notice, increased the possible sanction from a penitentiary sentence to a sentence to death for no valid reason after the defendant had exercised a procedural right. (*People v. Walker.*) However, as to the imposition of consecutive sentences, the record indicates that defendant was advised of the possibility of consecutive sentences before his original plea of guilty was made; and, after its withdrawal and before the entry of the second guilty plea, defendant was again admonished that, if sentenced to a term of imprisonment for murder, his sentences could be ordered to run consecutively. Thus, it cannot be said that defendant was not free to pursue his statutory right to appeal free from the fear that if a new trial were granted, he would face an additional and more severe sanction of consecutive sentences.

We are of the opinion that this conclusion comports with the rationale of the supreme court in the automatic appeal of defendant's death sentence where the court stated:

> "If it were shown on the record in this case that the prosecutor informed defendant from the start that the death penalty would be sought if defendant did not plead guilty, had defendant subsequently pleaded guilty, and then had defendant re-

neged on that bargain, we would not prevent prosecutors from again seeking to execute him." (*People v. Walker* (1981), 84 Ill. 2d 512, 525, 419 N.E.2d 1167, 1175.)

The substitution of the term "consecutive sentences" for references to the death penalty and seeking to execute defendant in the above quote, results in precisely what transpired in the case after remand. Defendant, having been made aware of the possibility of consecutive sentences from the outset, was sentenced to consecutive terms of imprisonment.

■■ Parenthetically, we also disagree with defendant's contention that the record does not support the State's assertion that defendant knew, when he entered the first guilty pleas, that the plea agreement included forbearance on the part of the State to seek consecutive sentencing. Defendant thus urges that it cannot be said that the State bargained away the possibility of consecutive sentencing. Any plea agreement involving the State's recommendation of a specific lesser sentence implicitly includes the State's forbearance to seek the maximum penalty the law provides for the offense. This is true whether or not the prosecutor so states in open court.

■■ ■ Next, defendant contends that the sentencing court failed to make on the record the findings requisite to imposition of consecutive sentences. Section 5—8—4(b) of the Unified Code of Corrections requires that the sentencing court, on imposition of consecutive sentencings, find on the record that in light of the history and character of the defendant and the nature and circumstances of the offense, such a term is required to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(b); *People v. Gaston* (1980), 88 Ill. App. 3d 314, 315-16, 410 N.E.2d 531, 532.) Here the court found on remand that:

> "*** having regard for the nature and circumstances of the offense, to the history, character, and condition of the defendant *** the Court FINDS: That any sentence other than imprisonment would deprecate the seriousness of the defendant's conduct and would be inconsistent with the ends of justice and it is necessary for the protection of the public that the defendant be sentenced to a term of imprisonment. ***"

The court's statement followed immediately that defendant's sentence for murder was 80 years, to be served consecutively. We agree with the State that such statements conveyed the court's feeling that a consecutive sentence, not merely a sentence of imprisonment, was necessary to protect the public. This rationale is supported by the fact that murder, the offense for which defendant was being sentenced, re-

quires a sentence of imprisonment; thus it would have been superfluous for the court to state that a sentence of imprisonment was necessary. Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3(c)(2)(A).

■ Defendant also argues that the following statement by the trial court indicates that court's erroneous belief that it was compelled to impose consecutive sentences:

"The Court has imposed the consecutive sentence pursuant to the provisions of Section [1005]—8—4, because the Court feels that this is provided for by law, one or more of the offenses being a Class X or a Class 1 felony."

We disagree with defendant's construction of this remark. That the court was aware of the extent of its discretion with respect to imposition of consecutive sentences is apparent in the court's comment to defense counsel just prior to the remark relied upon by defendant:

"Isn't it true, Mr. Glass, that even if they arise out of the same transaction, even if there is no substantial change in the criminal objective, the fact that one of them is a Class X or a Class 1 justifies a consecutive sentence?"

We find defendant's contention in this regard to be without merit because justification for the imposition of consecutive sentences does not amount to a requirement for their imposition.

■ Next, defendant argues that he could be sentenced to an extended term of 80 years only if the trial court found that defendant had previously been convicted of the same or a greater class felony or that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Defendant urges that no such finding appears of record. However, at the hearing at which the death penalty was imposed prior to defendant's appeal to the supreme court, the same trial court expressly found that the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Subsequently our supreme court remanded with directions that a sentence not greater than 80 years be imposed. Where a cause is remanded by our supreme court, the trial court cannot err if it follows the mandate of the supreme court in the further proceedings of the case, and no attention will be given to arguments that it erred in so doing. (*Sawicki v. Clemons* (1951), 411 Ill. 28, 30, 103 N.E.2d 107, 108.) In any event, the requisite finding having been made, we find that the fact that it was made prior to the most recent remand is without significance.

■ Defendant's contention that such a finding was not supported by the evidence is also without merit. Defendant urges that such a finding cannot be made where the acts complained of cause the vic-

tim's instantaneous death. This court rejected that contention in *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 1113-14, 435 N.E.2d 706, 708-09, which we find dispositive of the instant case. See *People v. La Pointe* (1981), 88 Ill. 2d 482, 501, 431 N.E.2d 344, 353.

Defendant next contends that the 80-year consecutive sentence for murder was excessive. Defendant argues: (1) this sentence leaves no hope of rehabilitation; (2) the court did not give sufficient weight to evidence of defendant's low intelligence and his intoxication at the time of the shootings; and (3) defendant had no history of significant prior offenses. In this regard, we are authorized to reduce the sentence of the trial court only if the court abused its discretion in imposing that sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884; *People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541, 548.) We find that the instant penalty is amply justified by the circumstances of the offense. The trial court properly could have concluded that protection of the public was more important than defendant's rehabilitation under these extreme circumstances. (See *People v. Velillari* (1980), 84 Ill. App. 3d 333, 347, 405 N.E.2d 466, 476.) The nature of the instant offense is such that we need not consider the veracity of evidence regarding defendant's state of intoxication at the time of the murder in determining the propriety of his sentence, as defendant invites us to do.

Defendant also argues that the trial court erred in concluding that codefendant Bainter was an expert witness upon the subject of defendant's intoxication, Bainter having drunk alcoholic liquor with defendant regularly over a long period of time. The court stated: "You could almost characterize Bainter as an expert in expressing his opinion as to the intoxication of Walker, as well as himself." We conclude that the court's use of the word "almost" evidences the court's awareness of the fact that Bainter was not literally an expert on the subject. We find no indication here that the court misunderstood the law with respect to the subject of expert witnesses.

Next defendant argues that the trial court erred at the hearing at which the death penalty was imposed in considering alleged criminal activity by defendant which did not result in convictions of record. Defendant implies that the trial court considered the same matters in sentencing defendant to consecutive terms of imprisonment on remand. The following four alleged offenses are complained of: (1) defendant's alleged 1978 arrest for unlawful use of weapons; (2) defendant's alleged 1978 arrest for suspicion of burglary; (3) the 1975 Clayton, Missouri arrest of "Amos Earl Walker" for theft over $150; and (4) Paul Bainter's testimony that he and defendant had partici-

pated in a Cahokia burglary. As stated in *People v. Grau* (1975), 29 Ill. App. 3d 327, 332, 330 N.E.2d 530, 534, on appeal it is presumed that the trial court recognized and disregarded any incompetent evidence introduced during sentencing proceedings. As to the first three of these four matters, we find nothing of record to rebut the presumption that these matters were not considered by the trial court. Regarding the alleged 1978 arrest for unlawful use of weapons, the presumption is reinforced by the court's express acknowledgment that the charge was dismissed. Concerning the "Amos Earl Walker" arrest, the court expressly stated that there was no disposition of record.

As to Paul Bainter's testimony that he and defendant had participated in a Cahokia burglary, we conclude that the trial court accorded that testimony little, if any, weight. The court on three occasions referred to Bainter's credibility as questionable during the sentencing hearing at which the death penalty was imposed. Regardless, Bainter's credibility as a witness was for the trial court to determine. (See *People v. Catlett* (1971), 48 Ill. 2d 56, 64, 268 N.E.2d 378, 382.) Here, the court was shown to understand the importance of determining Bainter's credibility. Accordingly, if the trial court did determine that Bainter's uncontradicted testimony regarding the alleged burglary was true, we find that such conclusion was not reversible error.

Additionally, we note that the sentencing hearing at which the death penalty was imposed reveals numerous references by the court, which are not now objected to, regarding offenses by defendant. These included weapons violations and almost continuous controlled substances offenses. Those matters support the trial court's apparent conclusion that defendant had a serious prior criminal history; the court need not have considered the four alleged offenses defendant now complains of to reach such a conclusion.

Finally, defendant contends that the court erred in listening to extensive testimony from the surviving shooting victims as to the extent of their injuries and their physical and financial suffering. Defendant urges that such evidence admitted at trial has been found to be reversible error. We reject defendant's contention that evidence inappropriate in a jury trial is also inappropriate at sentencing. (*People v. Adkins* (1968), 41 Ill. 2d 297, 300, 242 N.E.2d 258, 260.) The effect of a crime upon the victims is an aggravating factor which the sentencing court may properly consider. (*People v. Burton* (1981), 102 Ill. App. 3d 148, 153, 429 N.E.2d 543, 547.) We need not consider defendant's contention that the "rubric of plain error" requires that we consider this issue despite defendant's failure to object to this evi-

dence at the time of its admission.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

HARRISON, P.J., and KARNS, J., concur.