THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOSEPH SAUCIER, Defendant-Appellant.
Second District    No. 2—89—1112

Opinion filed November 6, 1991.

288

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Joseph Saucier, appeals from the revocation of his order of probation and the court's order of October 24, 1989, sentencing him to five years' imprisonment. We reverse the judgment revoking defendant's probation, we remand the cause, and we vacate the sentence imposed in the order of October 24, 1989.

On June 14, 1989, defendant pleaded guilty to one count of aggravated criminal sexual abuse, a Class 2 felony (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(e)). The factual basis of the plea was that, on or about April 11, 1987, defendant, who was born April 13, 1926, placed his finger inside the vagina of his 10-year-old stepdaughter, K.F., and fondled her breasts. After admonishing defendant of his rights, the trial court accepted the plea. The original sentencing order provided that defendant be placed on probation for a period of 36 months. Among other things, as a condition of probation, defendant was to serve 12 months' periodic imprisonment and was to be confined for 24 hours each day except that he was to be "released for any purpose of counselling or transfer to work release." Another condition was that defendant have "[n]o unsupervised contact with any minors whatsoever."

On September 20, 1989, the State filed a (second) petition for revocation of defendant's probation in which it alleged that he had willfully violated the terms of his probation by having unsupervised contact with the victim on September 3, 1989, and by violating the "Lake County Work Release Rules and Regulations" on September 3, 1989, when he went to an area not authorized by the work release facility.

On September 20, 1989, after a hearing, the trial court found that defendant had violated the conditions of his probation which had been imposed on August 15, 1989. At the hearing, Vanessa Norsworthy testified for the State. Norsworthy worked for the Lake County sheriff's office in the work release program where she supervised and maintained security in the building and residence. On September 3, 1989, defendant was a resident at the work release facility. At 7:23 p.m. on that date, Norsworthy was at 2160 Hebron Street in Zion, Illinois, where she was picking up her daughter at her girlfriend's home. Her girlfriend is Annette Cecil, the sister of Diane Saucier. Diane is defendant's former wife and the mother of the victim. Norsworthy, Cecil, and Diane Saucier were outside talking; they were on the street near the car. Norsworthy could not recall if K.F. was present.

Norsworthy noticed defendant drive down Hebron Street. She called his name; he looked at her but kept driving by. He twice turned

around and drove by. He was driving slowly. The next morning, Norsworthy pulled defendant's file at the work release facility to examine defendant's leave agreement. She identified the agreement as the State's exhibit, and it was admitted into evidence. Defendant had filled out a leave agreement for a 12-hour pass in which he listed the locations of his planned activities on September 3: "Go to church & spend the rest of the time at home," and "Church. Evanston. Home N. Chicago." In response to the item stating with whom he would be, he wrote in "Family." At the top of the form, the address and telephone number of his brother was listed under the rubric "APPROVED LEAVE SITE." Regarding transportation, defendant wrote in: "Driving myself."

Norsworthy said that a leave agreement is used so that the staff will know where an inmate resident is supposed to be at all times. Defendant never said he was going to Zion, nor did he call to say that he was changing his leave site. According to Norsworthy, defendant's presence in Zion was considered a violation of his periodic imprisonment/work release agreement. She stated that a handbook of rules and regulations is given to the residents. Norsworthy said a resident must notify the center immediately if there is a change of leave site.

Diane Saucier, the victim's mother, testified that she was standing outside her sister's house at 2160 Hebron Street at 7:23 p.m. on September 3. She was talking with Annette Cecil and Vanessa Norsworthy. K.F. was at a playground on the opposite side of the street, about 10 or 15 feet away from the road. Diane saw defendant drive by slowly; he honked and waved. He drove by three times.

Diane decided to get her children, Aaron and K.F., and go home, about three blocks away at 2413 Joppa Street. She parked in the driveway. As they were getting out of the car, defendant drove slowly through the alley by the house; he waved and smiled. He drove by a second time smiling. Diane reported the incident to the periodic imprisonment/work release facility.

K.F. testified that she also saw defendant drive by twice while she was in the park. He blew the horn, smiled, and waved. Defendant's conduct was repeated twice as she arrived home with her mother.

Annette Cecil also testified that defendant drove by slowly; he waved and blew his horn.

Defendant's girlfriend, Dorothy Rogers, testified that defendant visited her at about 7 p.m. at her home at 1915 Hebron Street. He left at 9:35 p.m. because he had to go back to the periodic imprisonment/work release facility by 10 p.m. Her home was 2½ blocks from 2160 Hebron Street.

Defendant testified, acknowledging that he filled out the leave agreement; he had planned to go to his church in Evanston and to his home in North Chicago. On his way back from those places, he went to Hebron Street to see a former employer named Underwood about a windshield for his nephew. He passed Underwood's house but did not see his car. He came back around Hebron and went to Dorothy's house. As he drove by, he recognized his ex-wife's sister, but not Vanessa Norsworthy. He did not honk, but he may have waved. He said he did not see K.F. and Diane. He denied knowing where Diane Saucier lived or that he drove by her house. On cross-examination, defendant stated that he never went to Joppa Street because he was warned by the judge never to go where Diane lived.

The trial court found that defendant went to an area that was not authorized by his pass; that he went out of his way to harass and annoy his ex-wife; and that he saw her and her daughter and passed by them again. The court concluded: "I think Joe is just playing games with them, with Work Release program, and with my order. So, I will find him in violation."

Defendant's motion to reconsider was denied, and he was sentenced to a five-year term of imprisonment.

On appeal, defendant argues that (1) where the probation order did not specify that he not violate any periodic imprisonment/work release rule or regulation, there could be no violation of the probation order on that basis; and (2) the State failed to prove by a preponderance of the evidence that defendant had "unsupervised contact with a minor" as specified in the order when he drove by the mother and her daughter. We agree in part.

■■ ■ A probationer whose probation the State seeks to revoke must be accorded substantial justice. (*People v. White* (1975), 33 Ill. App. 3d 523, 528.) While the defendant at a probation revocation proceeding is not entitled to the same protections afforded a defendant initially standing trial for the substantive criminal offense (*People v. Cox* (1990), 197 Ill. App. 3d 239, 243-44), he is nevertheless entitled to "minimal due process." (*People v. Hill* (1991), 208 Ill. App. 3d 887, 891.) Due process requires a fair determination that the acts which formed the basis for the revocation did occur and that fairness be accorded a defendant during the proceedings. (See *People v. Allegri* (1984), 127 Ill. App. 3d 1041, 1046 (discussing minimal due process requirements), *aff'd* (1985), 109 Ill. 2d 309.) A sentence of probation constitutes a form of agreement between the offender and the criminal justice system, and, because of the severity of the consequences if the agreement is broken, it is important that there be a definite, me-

morialized understanding of what is required of defendant. *People v. Brown* (1985), 137 Ill. App. 3d 453, 455.

■ Section 5—6—3(a) of the Unified Code of Corrections enumerates five specific conditions which attach to all sentences of probation and conditional discharge. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(a).) For example, the accused may not violate any criminal statute of any jurisdiction. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—3(a)(1); see also *People v. Newton* (1974), 18 Ill. App. 3d 180, 183.) However, where the court fashions its own discretionary conditions which are not enumerated in section 5—6—3(a), the probation order or certificate must reasonably specify in writing what conduct is expected of the accused. See *Brown*, 137 Ill. App. 3d at 455.

■ We recognize that, in some situations, it may be desirable or even necessary to express a condition in rather general terms; such a condition may still operate to prohibit specific conduct with which a defendant is charged if that conduct is clearly and fairly within the terms of the condition. (See *People v. Bruce* (1980), 102 Mich. App. 573, 579, 302 N.W.2d 238, 241; 3 W. LaFave & J. Israel, Criminal Procedure §25.3(c) (1984).) However, a probation requirement may be so ambiguous that it is not reasonable to say that the defendant's action was regulated by the standard of conduct imposed by the trial court, thereby rendering a penalty inherently incapable of enforcement. (*Hudgins v. State* (1982), 292 Md. 342, 348, 438 A.2d 928, 931.) Thus, for example, in *Morgan v. Foster* (1952), 208 Ga. 630, 632, 68 S.E.2d 583, 584, a condition that the probationer "maintain a correct life" was determined to be too vague and uncertain to be given any construction or application.

■ Due process requires that a person know in advance what behavior is expected or prohibited. Thus, it has been held that a condition of probation affords fair notice of what conduct is prohibited where the average person would understand the meaning of the condition. See 3 W. LaFave & J. Israel, Criminal Procedure §25.3(c), at 145 (1984); *Brown v. State* (Fla. App. 1981), 406 So. 2d 1262, 1263 (average person would understand the meaning of admonition to "Stay away from bars").

Notwithstanding the two allegations which the State maintains were violations of defendant's probation, the probation order itself did not sufficiently advise the defendant that he would be violating the order when he deviated from the rules of the periodic imprisonment/work release program, or when he drove by his ex-wife and her minor daughter on a public street in the presence of two other adults, or even when he drove by the ex-wife and her daughter as they returned

to their home. It is not sufficient to complain that defendant did not comply with the "spirit" of the order. See *People v. Prusak* (1990), 200 Ill. App. 3d 146, 149.

■ The order required that defendant have no unsupervised contact with any minors whatsoever. While it is arguable that defendant had at least visual contact from a distance, and while we sympathize with the victim in her extreme discomfort in seeing defendant, unfortunately, the term "unsupervised" is not defined in any way. The word has been defined to mean: "not under constant observation." (Webster's Third New International Dictionary 2512 (1986).) It is undisputed there was at least one adult present at all times who observed the drive-by incident. Regarding his harassment of the victim, defendant's conduct may have been less than honorable. However, it was not a violation of the probation order.

The court's determination as to a violation of probation based upon violations of periodic imprisonment/work release regulations is procedurally defective. However, the State has presented evidence upon which the trial court could have determined a violation of the conditions of probation by a preponderance of the evidence. (*People v. Prusak*, 200 Ill. App. 3d at 149.) Under the circumstances of this case, any sanction against defendant for violating the internal rules of the periodic imprisonment/work release program would have to come from a source other than the probation order itself. Those sanctions are set forth in section 5—7—2 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—7—2).

■ The defendant is imputed to have knowledge of criminal penal statutes. Section 5—7—2 of the Code sets forth conditions which may result in modification or revocation of periodic imprisonment. The court may revoke the periodic imprisonment if:

"(1) the offender commits another offense; or

(2) the offender violates any of the conditions of the sentence; or

(3) the offender violates any rule or regulation of the institution, agency or Department to which he has been committed." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—7—2.)

The record contains sufficient evidence to support a finding as to conditions 2 and/or 3 above.

■ These violations could, if deemed sufficiently serious, support a revocation of defendant's periodic imprisonment. If the court were to revoke defendant's periodic imprisonment, then defendant would have failed to serve his sentence of periodic imprisonment and he would have violated his *particular* terms of probation. Furthermore,

if the court had revoked defendant's periodic imprisonment, the court could have sentenced the defendant pursuant to subsection (c) of section 5—7—2, the same as he could have been sentenced for a violation of probation. The trial court's comments appear to reflect a determination that defendant's alleged violations were sufficiently serious to constitute a revocation of periodic imprisonment and/or probation. However, because the court improperly determined the defendant had unsupervised contact, we believe the court may have sentenced the defendant to a greater term than if the court had only considered the violations of defendant's periodic imprisonment.

The cause, is, therefore, remanded for the trial court to make further findings. The court is to consider if the violations of defendant's periodic imprisonment absent his "unsupervised contact" were sufficiently serious to result in a revocation of periodic imprisonment which would constitute a violation of his probation.

If the court so finds, then the defendant shall be entitled to a new sentencing hearing. If the court does not so find, then the defendant shall be allowed to conform to those conditions which might still be effective under his original terms of probation.

We again urge the State and the courts to assure that a probationer receives a definite and memorialized understanding of the terms of his probation to avoid the type of problem encountered here. See *People v. Glover* (1986), 140 Ill. App. 3d 958, 963.

The judgment of the circuit court of Lake County revoking defendant's probation is reversed; the cause is remanded; and the five-year sentence is vacated.

Reversed; remanded; and vacated.

INGLIS and BOWMAN, JJ., concur.