THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CATHY BEDENKOP, Defendant-Appellant.

First District (5th Division)   No. 1—92—0604

Opinion filed August 13, 1993.

Rita A. Fry, Public Defender, of Chicago (Michaela J. Kalisiak, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Jason H. Payne, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

On February 7, 1990, defendant Cathy Bedenkop pleaded guilty to possession of a controlled substance with intent to deliver and delivery of a controlled substance and was sentenced to two years' probation. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c).) In October 1991, a petition to revoke defendant's probation was filed for her failure to "appear and report." Following an evidentiary hearing, her probation was revoked and she was sentenced to seven years' imprisonment. On appeal, defendant contends that the trial court committed error in conducting the probation revocation proceedings by considering improper evidence and assuming the role of prosecutor and that the sentence imposed was manifestly erroneous. We agree with the defendant.

At the revocation hearing, Tina Moore, a probation officer, was examined by the court and testified that defendant failed to report on August 20 and September 18, 1991. Moore stated that defendant called her on August 20, 1991, the reporting date. She directed defendant to call the following week. When defendant called as directed, Moore told her that the next report date was September 18, 1991. When defendant appeared September 19, 1991, to report to Moore she was arrested on the probation violation petition. Moore also testified without objection by defense counsel that medical re-

ports indicated that on September 13, 1991, defendant gave birth to an infant addicted to cocaine.

Defendant was then sworn and examined by the court. She testified that she did not remember the August appointment, but that when she called about her September appointment, the probation officer said she seemed ill and rescheduled the appointment for a Friday. Defendant was arrested on the probation violation petition when she appeared for that appointment.

The following colloquy then took place between defendant and the court without objection by defense counsel:

"THE COURT: You were arrested after you came in.

THE DEFENDANT: Right.

THE COURT: And with respect to the baby born addicted to...allegedly addicted to cocaine, did you in fact give birth to a child so addicted?

THE DEFENDANT: Yes, I did, but it also...its not habitual use.

* * *

THE COURT: The child nonetheless is addicted to cocaine and presently addicted to cocaine or suffers from the fact that you were using cocaine while he was in your womb?

THE DEFENDANT: I used it once during my pregnancy and once a couple of times prior to my pregnancy."

Diane Pruitt, a Department of Children and Family Services (DCFS) child welfare worker, was next called to testify by the court. Pruitt, pursuant to examination by the court, testified that defendant would not cooperate in obtaining a drug assessment and that Pruitt had removed defendant's infant from the home and placed him in foster care because of his cocaine addiction accompanied by withdrawal symptoms, including night sweats and tremors. The court's examination of DCFS worker Pruitt had nothing to do with defendant's failure to report but dealt only with defendant's failure to cooperate in a drug assessment and placement of her baby in foster care for cocaine addiction.

Defendant first contends that she was deprived of her due process rights when her probation was revoked due to her cocaine use rather than her failure to report. A defendant at a probation revocation proceeding is not entitled to the same due process protections available at trial for a substantive criminal offense. (*People v. Cox* (1989), 197 Ill. App. 3d 239, 554 N.E.2d 360.) However, a defendant in a probation revocation proceeding is entitled to minimum due process rights which include written notice of the alleged conduct and to be judged

by a neutral and detached trial judge. (*People v. Hoyt* (1984), 129 Ill. App. 3d 331, 472 N.E.2d 568.) In a probation revocation proceeding, the State must prove a violation of probation by a preponderance of the evidence, while using only competent evidence. *People v. Reynolds* (1980), 91 Ill. App. 3d 683, 415 N.E.2d 685.

In the instant case, the petition to revoke defendant's probation was based only on her failure to report. When the revocation of probation hearing began, the trial court stated that, "This matter appears on the Court's calendar for sentencing." The judge then asked whether there had been a hearing on defendant's violation of probation. The following discussion then occurred:

> "STATE'S ATTORNEY: Must have been because you ordered a pre-sentence.
>
> THE COURT: I want to make sure that we've had a hearing. Let's see the half sheet.
>
> \* \* \*
>
> DEFENSE COUNSEL: I can't tell from my notes last time whether there was a hearing.
>
> THE COURT: We'll make sure that the record does reflect that to be the case. Can I have a copy of the petition, please?
>
> A PROBATION OFFICER: Are you going to do a hearing?
>
> THE COURT: I am going to have to do a hearing."

After being informed that the petition for revocation was based only on defendant's failure to report, and apparently before defendant even entered the courtroom, the court stated that "[defendant's] been using cocaine. That's another allegation that ought to be contained in the matter, that the baby is now addicted to cocaine."

At the conclusion of probation officer Moore's testimony about defendant's failure to report, the trial court stated that it was allowing the State to enlarge the grounds for revocation to include the fact that defendant used cocaine and had given birth to a child addicted to cocaine. The State had not requested this enlargement. Apparently, defense counsel never objected, asked for a continuance, or warned defendant about her right against self-incrimination. The fifth amendment privilege against self-incrimination exists at revocation probation hearings and counsel is ineffective if he does not control the assertion and the waiver of the privilege. (*People v. Yantis* (1984), 125 Ill. App. 3d 767, 466 N.E.2d 603.) Instead, defense counsel specifically asked defendant whether she used cocaine and whether her baby was born addicted to cocaine. The trial judge then stated his finding that defendant had violated the terms and conditions of her probation.

■ These events strongly support defendant's contention that she was deprived of her due process rights in several respects when the court on its own motion broadened the scope of the revocation proceeding without providing her with notice. (See *People v. Saucier* (1991), 221 Ill. App. 3d 287, 581 N.E.2d 852.) Because the petition to revoke probation only referred to defendant's failure to report, that is the only issue defendant had notice of and the only violation for which her probation could have been revoked. Instead, the court required defendant to answer to charges for which she had no notice and to give information that was self-incriminating. Furthermore, the child welfare worker was allowed to testify that defendant would not submit to a drug assessment. Such testimony was clearly improper since there was nothing in defendant's probation order making her probation conditional on the completion of a drug evaluation.

What is particularly troubling about this case is the fact that the record gives us no indication of how the trial court knew, before defendant even walked into the courtroom, that defendant had been using cocaine and had given birth to a cocaine-addicted baby. As noted above, the trial judge initially thought that defendant was appearing in court only for sentencing. It is therefore likely that in order to prepare for what he thought was going to be a sentencing hearing, the trial judge read the presentence report. Even the State has conceded at oral argument the possibility that the judge learned of defendant's cocaine use while on probation from reading the presentence report. While such information may be taken into consideration during sentencing, information regarding defendant's cocaine use was inadmissible and should not have been considered by the trial court during the hearing to revoke defendant's probation based on her failure to report. See *People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258 (information in presentence report concerning a defendant's background and characteristics, while not necessarily admissible in an evidentiary hearing, may properly be considered by the trial court in determining the appropriate sentence to be imposed).

It is therefore clear that defendant was denied a fair probation revocation hearing when the trial court expanded the hearing to include allegations of defendant's drug use without providing defendant notice, and then blurred the line of demarcation between the revocation and the sentencing hearing. The trial court never stated its reason for finding defendant in violation of probation, and we are unable to determine whether the trial court based its decision to revoke defendant's probation on her failure to report, her cocaine use, her in-

fant's cocaine addiction or all three. Therefore, we can only conclude that defendant was denied a due process hearing.

■ Defendant next contends that she was denied a fair trial because the trial court abandoned its impartial role and assumed the role of the prosecutor. The trial judge has discretion to question witnesses in order to elicit the truth or clarify material issues which seem obscure as long as he does so in a fair and impartial manner. (*People v. Brown* (1990), 200 Ill. App. 3d 566, 576, 558 N.E.2d 309.) The trial judge must not assume the role of an advocate. *People v. Franceschini* (1960), 20 Ill. 2d 126, 169 N.E.2d 244.

Our careful review of the record here reveals that the trial judge did not merely attempt to clarify the issues, but rather assumed the role of the prosecutor. It was the trial judge, and not the prosecutor, who called State's witnesses and conducted examinations of these witnesses. In fact, the prosecutor said nothing throughout the entire proceeding. The instant case is similar to *People v. Cofield* (1973), 9 Ill. App. 3d 1048, 293 N.E.2d 692, wherein it was determined that the trial judge improperly assumed the role of the prosecutor when he called the State's witnesses, conducted the examinations, and asked questions that elicited testimony in favor of the State. Furthermore, in the instant case, the expansion of the probation hearing by the court to include evidence of defendant's drug use and the fact that she gave birth to a drug-addicted baby underscores the assumption by the trial judge of the role of the prosecutor.

We note that under normal circumstances, defense counsel's failure to object to the errors occurring in defendant's hearing would constitute a waiver. (*People v. Enoch* (1988), 122 Ill. 2d 176, 527 N.E.2d 1124.) Under the circumstances here, where the trial judge assumed the role of the prosecutor, defense counsel may have been too intimidated and afraid of being held in contempt to object to the errors described above. We therefore conclude that the waiver rule applicable in normal adversarial proceedings is not applicable in proceedings in which the judge assumes a prosecutorial role.

■ Defendant's last contention is that the trial court erred when it sentenced defendant, not for the original crime, but for her conduct since she was put on probation. When a defendant's probation is revoked, the trial court may sentence defendant to any term that would have been appropriate for the underlying offense. (*People v. Gaurige* (1988), 168 Ill. App. 3d 855, 522 N.E.2d 1306.) Although a defendant cannot be sentenced upon revocation for the activity which constituted the probation violation, the defendant's conduct on probation may be utilized by the trial court to assess the defendant's potential

for rehabilitation. (*People v. Bogan* (1989), 185 Ill. App. 3d 129, 540 N.E.2d 1135.) The trial court may not commingle the matters relating to the original offense with the conduct that gave rise to the probation revocation. *People v. Deskin* (1977), 47 Ill. App. 3d 328, 361 N.E.2d 1188.

During the sentencing hearing in the instant case, the trial judge questioned defendant about the father of her children and his whereabouts. The judge then proceeded to question defendant vigorously about her cocaine use as follows:

"THE COURT: Jeffrey and Joseph are also cocaine babies. You understand that?

THE DEFENDANT: I knew nothing of Jeffrey.

THE COURT: Well Jeffrey suffers from certain problems as much as he is hyperactive and given to banging his head. Joseph is emotionally and mentally handicapped.

You understand that, and those conditions as far as you're concerned, you don't know whether or not they're related to the fact that you were ingesting cocaine when they were born. Is that the case, ma'am?

THE DEFENDANT: In some cases no.

THE COURT: You've been taking cocaine when those children were in your womb?

THE DEFENDANT: The doctors told me that.

THE COURT: I'm just asking the questions. You can give me the answers. You can say yes or no, but don't tell me what the doctors said at the present time when I'm asking you a question as to whether or not their present state of being is related to their ingestion of cocaine through your body.

You were taking cocaine at the time you were carrying those children, weren't you?

THE DEFENDANT: I was in—When the case worker—

THE COURT: I'm just asking a question. I'm not asking you what the hospital records indicate. I'm asking you as a human being, were you taking cocaine when you were having babies?

THE DEFENDANT: I'm not a constant user like you said.

THE COURT: You weren't a constant user, but were you taking cocaine at that time?

THE DEFENDANT: Occasionally, once in a great while.

THE COURT: Very well. [Defense counsel] suggests that these children might well be victims and, in fact, they are victims of your abuse of this drug. How many more times am I

going to allow you to become pregnant and to have more children damaged by their exposure to cocaine in your womb?

[DEFENSE COUNSEL]: Judge, what I suggested is that she is also a victim of this.

THE COURT: Certainly, she's a victim, but how many more victims are we going to have? We already have three victims.

[DEFENSE COUNSEL]: I hope none, but you could order her to comply with this lady's program that she didn't cooperate with before and have her treated for the drugs instead of sending her to the penitentiary.

THE COURT: What are we going to spend to have her comply with the laws as they are in this country? Are we going to put a watchman on this woman twenty-four hours a day to make sure she doesn't violate the laws and engage in a situation in which she's endangering the health of her present children and possibly becoming pregnant again and further causing problems for other individual victims, so to speak?

What we understand of the effects of cocaine on the unborn, it appears that those effects manifest themselves for many years down the line right through the areas in the primary education and secondary education. The youngsters are becoming emotional problems and become learning problems she's exhibited [*sic*] upon these young children.

I don't think that I've got a right to sit up here and permit the defendant to go back out on the street wily-nilley [*sic*] and to appropriate [*sic*] more children that will be under a similar—

THE DEFENDANT: Prior to my present terms in Cook County, I've been—I'm trying to get up something where I could get my tubes tied. I don't want to have any more children. Four is enough.

THE COURT: You don't want to have any more children. I'm not in a position of turning you around having you sterilized or order that your tubes be tied. Right now, you're a time bomb as far as I'm concerned, ma'am. You and many individuals that are similarly situated as far as I'm concerned. I don't want to see you become pregnant for fear of the fact that you may endanger the life or the quality of life of some more children.

As I say, these children of yours are presently—all four of your children are in private placement. I think that with respect to sentencing, I'm not here to punish you, ma'am, believe me I have no intention of doing that, but I certainly am going

to preclude you as best I can for as long as I can from becoming pregnant."

The trial judge then stated that he was sentencing defendant to seven years in the Illinois Department of Corrections.

The trial court could have sentenced defendant to three to seven years, the sentence available under defendant's original offense, delivery of a controlled substance and possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c)). Although defendant's sentence was within the statutory range, it was improper for the trial court to give her the maximum penitentiary sentence on the facts and circumstances presented by this record. The trial judge's remarks clearly reveal that the sentence was not based on the original crime and her potential for rehabilitation, but on conduct occurring since she was put on probation.

Furthermore, we are particularly disturbed by the trial judge's comment that he was sentencing defendant to seven years not to punish her, but to prevent her from becoming pregnant. Since the trial court recognized that it could not force defendant to be sterilized, it should also have realized that it could not sentence defendant to seven years' imprisonment as a means of pregnancy prevention. Defendant specifically stated that she did not want any more children and she was working on arrangements to get her tubes tied. Therefore, if the trial judge truly did not want to punish defendant, he could have recommitted her to probation with a referral to a drug rehabilitation program and to agencies to assist her in family planning. Instead, the trial court sentenced defendant to seven years' imprisonment without offering her any medical services or other therapy. Certainly this punishment does not solve the problem of women giving birth to drug-addicted babies. By considering as a factor in aggravation defendant's giving birth to a cocaine-addicted baby, the judge subjected her to additional punishment a male drug user will never face. See Wilkens, *Solving the Problem of Prenatal Substance Abuse: An Analysis of Punitive and Rehabilitative Approaches*, 39 Emory L.J. 1401 (1990) (punishing the mother does not solve the problem of prenatal drug abuse, but a treatment program will help both mother and child); Glink, *The Prosecution of Maternal Fetal Abuse: Is this the Answer?*, U. Ill. L. Rev. 533 (1991) (one way to ensure that a woman will not continue to give birth to drug-dependant babies is to provide the woman with greater access to prenatal care and educational and rehabilitation programs); Roberts, *Punishing Drug Addicts Who Have Babies: Women of Color, Equality and the Right of Privacy*, 104 Harv. L. Rev. 1419, 1481 (1991), ("The State's decision to punish

drug addicted mothers rather than help them stems from the poverty and race of the defendants and society's denial of their full dignity as human beings'').

We do not diminish the serious problem of women giving birth to drug-addicted babies, but this problem is not solved by depriving a defendant of her due process rights and then sentencing her to the maximum period of incarceration permitted for the offense for which she was on probation as a means of pregnancy prevention. If the trial court's questions and comments were innocuous and merely demonstrated a concern for the problems of drug use and parents who show little apparent responsibility for their children, as the specially concurring opinion maintains, the gender-specific punitive manner in which the court chose to address them only to the female parent in this case was wholly inappropriate. Defendant was entitled to notice of the charges brought against her, a revocation hearing presided over by an impartial judge and a sentencing hearing where the proper factors were taken into consideration. Because the evidence in support of revoking defendant's probation is scant and the hearing was replete with incompetent evidence and self-incriminating statements of defendant elicited by the court, we conclude that the judgment of the circuit court of Cook County should be reversed and remanded for proceedings consistent with the views expressed herein.

Reversed and remanded.

COUSINS, J., concurs.

JUSTICE MURRAY, specially concurring:

I concur in the result, but disagree with some of the majority reasoning.

I do not feel the trial judge adopted the role of prosecutor. The trial judge's questions and comments demonstrate a concern for two of the great problems of our democratic society, *i.e.*, drug use and parents who apparently show no responsibility for their children.

The judge's sentence of seven years appears to be based on matters other than her failure to appear and report. The majority, therefore, correctly reversed the judgment and remanded the cause for a new hearing.