2023 IL App (1st) 220801-U
No. 1-22-0801
Order filed August 7, 2023

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20 DV 60679 |
| MILAN BROWN, | ) ) | The Honorable |
| Defendant-Appellant. | ) ) | Vincenzo Chimera, Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appeal is not moot because the revocation of conditional discharge carries collateral consequences that have the possibility of future ramifications for defendant, despite his having served the sentence. The State proved defendant violated the conditions of the sentence of conditional discharge by a preponderance of the evidence, and the trial court's findings of fact were not against the manifest weight of the evidence.

¶ 2    In May 2021, Milan Brown pled guilty to one count of Class A misdemeanor battery of his ex-girlfriend's father. He was sentenced to one-year conditional discharge and 50 hours of community service. The trial court also ordered Brown (i) to have no contact with his ex-girlfriend or her father and (ii) to complete an anger management course.

¶ 3    In July, the State petitioned to revoke Brown's conditional discharge, alleging that, the previous day, Brown called a landline phone at the home where his ex-girlfriend lived with her parents. Brown asked to speak to his ex-girlfriend and thought she was on the line, but it was her mother instead. In early August, Brown again called the landline. This time Brown spoke with the father. Over the next four days, Brown texted his ex-girlfriend about the July petition to revoke. In September, the State filed a second petition, alleging Brown violated the no-contact order by contacting the father. The State later filed an Amended Bill of Particulars that included the text messages.

¶ 4    After a hearing, the trial court found Brown violated the terms of his conditional discharge and sentenced him to 364 days in jail. The court said it did not consider the July call at all.

¶ 5    We affirm. Initially, we hold that the appeal is not moot. The revocation of conditional discharge carries collateral consequences that have the possibility of future ramifications for Brown beyond the sentence already served. As to the merits, the trial court's findings were not against the manifest weight of the evidence, and we hold the State proved a violation of the conditions of the sentence by a preponderance of the evidence.

¶ 6                              Background

¶ 7    Brown pled guilty to one count of Class A misdemeanor battery for pushing George Jones, the father of his ex-girlfriend, Triste Jones Harris. The court sentenced Brown to one-year conditional discharge. As a condition of his sentence, a no-contact order required that Brown have no contact with either Jones Harris or Jones. Her mother was not a party to the no-contact order.

¶ 8    A few months later, on July 20, 2021, Brown called the Jones' home phone looking for Jones Harris. Brown talked for 45 minutes with Jones Harris's mother, believing he was speaking

with Jones Harris. The next day, the State petitioned to revoke Brown's conditional discharge, alleging he contacted Jones Harris.

¶ 9 On September 9, the State again petitioned to revoke, alleging Brown contacted Jones on August 6. The day after, the State filed a Bill of Particulars detailing this call. Later, the State amended the Bill to include the text messages Brown sent Jones Harris on August 7 and 9. The court held one hearing on both petitions. Jones Harris, Jones, and her mother testified.

¶ 10 Jones Harris' mother testified that Jones Harris dated Brown for two years, beginning in 2018. In July 2021, she, Jones, and Jones Harris and her two children lived together. When the home landline rang, she did not recognize the number on the caller ID but knew Brown's voice. Brown did not give her a chance to speak other than to say "hello." Brown hung up after talking for an hour, during which he insulted and threatened the family. The next day she called the police.

¶ 11 Jones testified that he was familiar with Brown's voice, having spoken to him about 100 times while Brown dated his daughter. On August 6 Brown called the home line; Jones recognized the caller's number, answered, and heard Brown's voice. The call lasted about 45 minutes. Brown made insulting and derogatory comments while Jones Harris stood beside her father, recording the call on her cellphone. After the call, Jones contacted the police, who came to the house and listened to the recording. Jones Harris's phone later broke, and she could not retrieve the recording. The trial court admitted the fact of the call but excluded testimony about its content.

¶ 12 On cross-examination, Jones admitted he did not like Brown and was pleased when they broke up. He once fired a gun at Brown after Brown attacked him in his car. Jones called the police who arrested Brown. Later, Brown was placed on GPS home monitoring. After that, Brown did not come to the house, and Jones had not seen Brown on his property, although the monitoring station contacted him several times to say that Brown was in his neighborhood.

¶ 13    Jones Harris testified that she had dated Brown for about two years, had spoken on the phone with him hundreds of times, and knew his voice and phone numbers. Brown called and texted her after the no-contact order, but she could not remember the dates. Brown sent her threatening text messages on August 7, 8, 9, and 10. In the texts. Brown urged her to convince her father to drop the charges against him. Also, during the July call, she believed Brown thought he was speaking to her rather than her mother.

¶ 14    The trial court ruled that Brown violated the conditions of his conditional discharge when he telephoned Jones on August 6, and again when he sent text messages to Jones Harris on August 7, 8, 9, and 10. The court did not find a violation for the July 16 call because Jones Harris' mother was not a protected party under the terms of the conditional discharge.

¶ 15                                    Analysis

¶ 16    Brown argues: (i) his challenge is not moot; (ii) the State failed to present competent evidence to support the July petition to revoke; and (iii) the State failed to prove by a preponderance of the evidence that he contacted Jones as the September petition alleges.

¶ 17    The State contends that Brown's challenge is moot because Brown has completed his jail sentence. On the merits, the State contends the evidence at the hearing supports that Brown violated the terms of his conditional discharge sentence.

¶ 18                                    *Mootness*

¶ 19    First, we address mootness. Generally, reviewing courts do not decide moot questions. An exception is the collateral consequences exception. *People v. McCoy,* 2014 IL 130632, ¶ 11-12. This exception arises when the defendant may be subject to collateral legal consequences after serving the sentence. See *People v. McNett,* 338 Ill. App. 3d 257, 260 (2003).

¶ 20    Here, where the defendant was sentenced to one year of conditional discharge and could already have served his sentence at the time of the decision, the supreme court stated, "the probability that a criminal defendant may suffer collateral legal consequences from a sentence already served precludes a finding of mootness." *People v. Jones*, 215 Ill. 2d 261, 267 (2005) (citing *Minnesota v. Dickerson,* 508 U.S. 366, 371 n. 2, (1993)). And in the context of a challenge to the revocation of probation, the supreme court found that an appeal was not moot where the defendant had completed a sentence of probation but could be subject to collateral consequences in the future. *People v. Brown,* 2013 IL 114196, ¶ 33 ("probability that a criminal defendant may suffer collateral legal consequences from a sentence already served precludes a finding of mootness.").

¶ 21    We consider this appeal because of the potential ramifications for Brown. A violation of his conditional discharge could affect him adversely in a future proceeding or other aspects of his life, including employment efforts or future child custody proceedings. See *In re J.B.*, 2020 IL App (4th) 190424-U, ¶ 13 (in termination of parental rights proceeding court took judicial notice of respondent's prior sentence of 12 months conditional discharge, fine, and 30 days in jail).

¶ 22                              *Revocation of Conditional Discharge*

¶ 23    A defendant sentenced to a conditional discharge has already been tried and convicted of the underlying criminal offense. *People v. Tufte*, 165 Ill. 2d. 66, 77 (1995). A violation of the terms of the conditions of discharge subjects the defendant to revocation and resentencing.730 ILCS 5/5-6-4 (West 2020) ("If the court finds that the offender has violated a condition at any time prior to the expiration or termination of the period, it may continue him on the existing sentence, with or without modifying or enlarging the conditions, or may impose any other sentence that was available under Article 4.5 of Chapter V of this Code ***.")

¶ 24    At a hearing to revoke conditional discharge, the State has the burden of proving a violation by a preponderance of the evidence. 730 ILCS 5/5-6-4(c) (West 2020); *People v. Smith*, 337 Ill. App. 3d 819, 822 (2003). The evidence at a revocation hearing "shall be presented in open court with the right of confrontation, cross-examination, and representation by counsel." 730 ILCS 5/5-6-4(c) (West 2020). "A preponderance of the evidence" means the allegation must be more probably true than not. *People v. Matthews*, 165 Ill.App.3d 342, 344 (1988). Before revoking, due process requires a fair determination of the acts alleged in the petition occurred. *People v. Strickland,* 211 Ill.App.3d 183, 191 (1991).

¶ 25    Regarding a petition to revoke probation, we will affirm the trial court's finding of fact unless against the manifest weight of the evidence. *People v. Moaton*, 182 Ill. App. 3d 161, 166 (1989). To be against the manifest weight requires that the opposite conclusion be apparent or the finding is arbitrary, unreasonable, or not based on the evidence. *People v. Peterson,* 2017 IL 120331, ¶ 39. Conflicting evidence alone does not suffice for an appellate court to reject a violation finding. *People v. Moaton*, 182 Ill. App. 3d 161, 166 (1989).

¶ 26                                  Manifest Weight of the Evidence

¶ 27    Brown contends the findings he had violated his conditional discharge by contacting Jones were against the manifest weight of the evidence. According to Brown, the evidence at the hearing indicated that he contacted Jones Harris in August, weeks after the July petition's filing. Brown claims the State failed to prove he contacted Jones, as the September 9 petition alleged. Brown points to Jones's biases and the inconsistencies between Jones and Jones Harris' testimony regarding who spoke to Brown on August 6.

¶ 28    Brown argues that Jones's testimony should have been viewed with skepticism because Jones admitted bias toward Brown when he said that he did not like Brown, did not want him dating his daughter, and was happy they ended the relationship.

¶ 29    As stated, contradictory testimony does not necessarily destroy the credibility of a witness. *People v. Morez,* 2022 Il App (3rd) 190425, ¶ 57. The trier of fact is responsible for determining the credibility of witnesses, weighing the testimony, resolving conflicts in the evidence, and drawing reasonable inferences. *Id.* at 62. The record reflects that when asked if he disliked Brown, Jones answered, "I have nothing against him" and "I don't like what he does." Jones's statements do not rise to the level of establishing bias. The State met its burden of proving a violation by a preponderance of the evidence; the trial court's ruling was proper.

¶ 30                                    *Due Process Violation*

¶ 31    Brown further argues that he was adduced violating his conditional discharge for conduct that had not occurred when the petition was filed, thus, implicating his due process rights.

¶ 32    On July 21, the State petitioned to revoke Brown's conditional discharge, alleging that he called Jones Harris on July 20. On August 6, Brown called and spoke to Jones. Over the following four days, Brown texted Jones Harris several times about the July petition to revoke. On September 9, the State filed the second petition to revoke based on the August 6 contact with Jones. The next day in response to Brown's motion, the State filed a bill of particulars detailing three incidents on three dates when Brown allegedly violated the conditions of his conditional discharge.

¶ 33    A bill of particulars gives notice of the charge and informs of the particular transactions to enable defendants to prepare a defense. *People v. Woodrum,* 223 Ill. 2d 286, 301 (2006). "[E]vidence tending to establish the transactions set forth in the bill of particulars is admissible."

*People v. Kliner*, 185 Ill. 2d 81, 138 (1998). And "a variance between the bill of particulars and the evidence at trial does not result in reversible error where the defendant has not been misled or prejudiced in the preparation of his defense." *Id*.

¶ 34    Brown contends that the State failed to present competent evidence supporting the July 21 petition based on contact with Jones Harris. In support, Brown refers to evidence that he contacted her mother on July 16. The Bill of Particulars included both the July 16 call and the August 6 call and the text messages sent to Jones Harris on August 7. Brown further contends the trial judge "*sua sponte* broadened the scope of the revocation proceedings and revoked Brown's conditional discharge on the basis that he sent text messages to Jones Harris on August 7, 2021."

¶ 35    Brown alleges that including the text messages to Jones Harris violates his due process rights, relying on *People v. Bedenkop,* 252 Ill. App. 3d 419 (1993). Brown claims he was found in violation for conduct in August involving a petition filed in July. I

¶ 36    In *Bedenkop*, the State petitioned to revoke the defendant's probation premised solely on her failure to appear and report to probation twice. Although she received notice alleging failure to report at the revocation hearing, the court allowed the State to enlarge the basis of the revocation, despite no notice to her that her probation could be revoked based on drug use or the birth of her addicted baby. *Id.* at 423. And the trial judge failed to state reasons for finding a violation, which also affected her due process rights. *Id*.

¶ 37    In contrast, the trial court revoked Brown's conditional discharge based on the second petition filed in September, not the July petition. In addition, the conduct alleged in the September petition was the same conduct alleged at the hearing: the August 6 phone call to Jones and the text messages to Jones Harris, both contacts occurring before the filing of the September petition. Plus, the Bill of Particulars spelled out the specifics. Finally, the trial court's ruling ignored the July

phone call to Jones Harris' mother. So Brown received adequate notice of the alleged conduct, and there was no due process violation.

¶ 38    Based on Jones' testimony, it was reasonable for the trial court to conclude that Brown violated the terms of his conditional release by calling Jones on August 6. See *People v. Wolst*, 347 Ill. App. 3d 782, 792 (2004) ("We cannot say that this determination was against the manifest weight of the evidence because the opposite conclusion is not clearly evident under these facts.").

¶ 39    Affirmed.