THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANNA M. McCLELLAN, Defendant-Appellant.

Fifth District    No. 5—03—0273

Opinion filed December 2, 2004.

KUEHN, J., specially concurring.
CHAPMAN, J., dissenting.

N. Scott Rosenblum, of Rosenblum, Schwartz, Rogers & Glass, P.C., of Clayton, Missouri, for appellant.

Stan Brandmeyer, State's Attorney, of Carlyle (Norbert J. Goetten, Stephen E. Norris, and Sharon Shanahan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

The defendant, Anna M. McClellan, was charged by a second amended information with aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1) (West 1998)) for sexually abusing her minor son in 1995 and 1996. She pleaded guilty and was sentenced to three years of probation. The terms of her probation required her to obtain a mental health evaluation and to complete any counseling recom-

mended as a result of the evaluation. The defendant was also required to complete sex offender counseling. The trial court revoked her probation on the basis that the defendant had failed to complete sex offender counseling, and the court sentenced her to five years in prison. For the reasons that follow, we reverse the ruling of the trial court.

The defendant is a 39-year-old woman from Breese, Illinois. This case involves her oldest son, T.B., now 21 years old. In June 1998, when T.B. was 15, his biological father and stepmother informed law enforcement that they suspected that the defendant had sexually abused T.B. over a 12-year period. T.B. informed authorities that the sexual abuse had begun when he was three or four but that he did not remember much of it. He recalled that it began again in 1995 and continued thereafter. Given the timing of the latest abuse, he suspected that he was the father of his mother's youngest son.

On June 11, 1998, the State charged the defendant by information with one count of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1(a)(1) (West 1998)). The State filed an amended information on January 27, 1999, adding a second count for aggravated criminal sexual assault (720 ILCS 5/12—14(b)(i) (West 1998)). Although not made a part of the record, it appears that the State filed a second amended information on July 21, 1999, adding a third count for aggravated criminal sexual abuse (720 ILCS 5/12—16(c)(1) (West 1998)). The defendant pleaded guilty to the third count in exchange for the State dismissing the first two counts and recommending three years of probation. The trial court sentenced her to three years of probation, from July 21, 1999, until July 21, 2002. The probation order stated that the defendant was required to obtain a mental health evaluation and complete any counseling recommended as a result of the evaluation, in addition to completing sex offender counseling.

A summary of the defendant's counseling history follows. The mental health evaluation required by the probation order was performed by Karol Kiel, M.A., who provided individual therapy to the defendant from January 6, 2000, until March 1, 2001. The written report of the evaluation, entitled "Mental Health Assessment," is not dated. The defendant had been seeing Kiel to work on personal issues, including emotional stress resulting from the sexual abuse charges and her divorce. Kiel recommended in the report that the defendant continue individual therapy and treatment for sex offenders. Nothing in the record demonstrates that the defendant followed Kiel's recommendation that she continue individual therapy.

The defendant entered group therapy for sexual offenders with Darlene Diamond-Bushue, M.A., in September 1999. She attended and participated in Diamond-Bushue's group for two years. On September

8, 2001, Diamond-Bushue discharged the defendant and authored a progress report which states that the defendant maintained her innocence through the course of treatment and was being discharged because she had reached maximum benefit as a result of her denial of guilt. Diamond-Bushue recommended that the defendant obtain individual therapy with a female sex offender specialist to address any unresolved issues. Again, nothing in the record demonstrates that the defendant engaged in the specialized individual therapy recommended by Diamond-Bushue in September 2001.

The defendant reentered group therapy with Diamond-Bushue on November 19, 2001, approximately one month after she had been discharged. Therapy continued until June 2002 and concluded in conjunction with the termination of her probation. Diamond-Bushue authored two additional documents during this second period of therapy with the defendant. The first document, dated March 25, 2002, entitled "Client Staffing Evaluation," was authored by Diamond-Bushue four months into this second period of therapy. Diamond-Bushue noted that the defendant had made progress in all the areas evaluated, including behavior control, group therapy involvement, understanding criminal thinking, and appreciation of the harm and costs of crimes. However, Diamond-Bushue noted that the defendant had made minimal or no progress in her ability to disclose her abusive history, and she recommended that the defendant continue in group therapy, which she did. Diamond-Bushue stated in her August 5, 2002, "Discharge Summary" that the defendant had consistently attended and actively participated in group therapy sessions and demonstrated knowledge and understanding of the concepts presented. Diamond-Bushue further stated that the defendant was able to confront other group members about their offenses and to provide insight. Nonetheless, at the end of the defendant's third and final year of probation and counseling, Diamond-Bushue discharged her "unsuccessfully" based on her "lack of accountability regarding sexual abuse allegations." She recommended that the defendant participate in a sex offender evaluation and a clinical polygraph examination to determine her level of risk to children. Like the individual therapy recommended by Kiel and Diamond-Bushue in 2001, there is no evidence in the record that reflects that the defendant participated in a sex offender evaluation or polygraph examination as recommended.

During her second course of treatment with Diamond-Bushue, the defendant contacted Marie Clark, M.A., of the Behavioral Science Institute on November 5, 2001. It is not clear from the record whether she treated with Clark voluntarily. It is also not clear whether Clark specialized in female sex offenders, as had been recommended by

Diamond-Bushue two months earlier. Regardless, it appears that the defendant did not obtain any therapy from Clark at all. She only completed an intake evaluation over the course of three appointments in November and December 2001.

In summary, after our review of the documentation of the defendant's group sex offender counseling, individual therapy, and evaluations, it appears that she first attended group sex offender counseling with Diamond-Bushue from September 1999 until June 2002, which was interrupted for one to two months following her first discharge. From January 6, 2000, until March 1, 2001, she attended individual therapy with Kiel, who authored the mental health evaluation required by the probation order. Last, the defendant completed the intake process with Clark over three visits in November and December 2001 but did not engage in any therapy during that time.

On July 3, 2002, shortly after the defendant was discharged from therapy by Diamond-Bushue for the second time, the State filed a petition to revoke probation, alleging that the defendant had violated the terms of her probation by failing to support her lawful dependents and by failing to complete sex offender counseling. The petition was filed less than three weeks before the defendant's probationary period expired. The defendant filed a memorandum in opposition to the State's petition. She argued that she had complied with the trial court's probation order in every respect and that the trial court could not revoke her probation because she was not "cured" or because she did not benefit from the court-ordered therapy. She relied solely on *People v. Prusak*, 200 Ill. App. 3d 146, 558 N.E.2d 696 (1990) (holding that a condition placed on the sex offender's probation—to complete a treatment program—was not violated when the offender was asked to leave group therapy when he would not accept responsibility for his sexual misconduct).

The parties filed a stipulation related to the State's revocation petition. The parties agreed to the following facts. They agreed that the defendant had been ordered to complete sex offender counseling. She attended therapy with Diamond-Bushue from September 1999 until September 2001 and from October 2001 until March 2002.[1] The parties also agreed that the defendant had attended and participated in all the group sessions required and had demonstrated appropriate

---

[1]We note that there is a conflict in the record regarding the exact dates of the defendant's second round of therapy with Diamond-Bushue. However, the majority of the evidence reflects that the defendant attended counseling with Diamond-Bushue from September 1999 until June 2002, with a one- to two-month break in between.

effort on homework assignments and contributed to group discussions. She had made good progress in every respect except she had not admitted the offense. The parties attached exhibits to the stipulation: Diamond-Bushue's progress report, client staffing evaluation, and discharge summary. It appears, however, that Kiel's mental health assessment required by the probation order was omitted from the parties' stipulation.

The trial court heard argument on the State's petition to revoke on October 28, 2002. The parties' arguments focused mostly on the applicability and propriety of *Prusak*, upon which the defendant relied. The trial court took the matter under advisement and on November 6, 2002, revoked the defendant's probation "for her failure to complete sex offender counseling." The docket entry states in pertinent part:

"4) Whether or not defendant is willing to admit the acts for which she is on probation has not been considered by this court on the issue of whether defendant has violated the probation order.

5) Paragraph 13 of the probation order states, 'The defendant shall complete sex offender counseling.'

6) Defendant has not completed sex offender counseling. The stipulation submitted by counsel and defendant indicates that defendant requires continued group therapy, a sex offender specific evaluation[,] and further individual therapy. This counseling has not been completed.

7) Defendant has not requested an extension of the term of probation to complete sex offender counseling."

The defendant filed a posttrial motion or alternative motion to reconsider, arguing that she had completed sex offender counseling as required by the probation order even though she had not admitted the offense. She again relied solely on *People v. Prusak*, 200 Ill. App. 3d 146, 558 N.E.2d 696 (1990).

Prior to the trial court hearing this motion, the defendant's probation officer filed a presentence investigation report on January 2, 2003. He stated that the defendant had complied with all probation conditions except for the successful completion of sex offender counseling. He stated that counseling services had concluded in conjunction with the termination of her probation and that she had attended counseling regularly. The circumstance of the probation violation was that she never admitted her responsibility regarding the offense and had been discharged unsuccessfully from treatment as a result.

The parties appeared before the trial court on the defendant's motion to reconsider and for sentencing on January 29, 2003, at which time the defendant requested a continuance to allow her to voluntarily complete additional counseling, testing, and evaluation with Marie

Clark, M.A. The trial court allowed the continuance, reserved ruling on her motion to reconsider, and stated, "It is Defendant's intention to address issues raised by Counselor Darlene Diamond-Bushue's Discharge Summary of 8/5/2002." The defendant contacted Clark on January 30, 2003, and participated in the intake process at Behavioral Science Institute during four visits in February and March of 2003.

Two additional circumstances delayed matters further. Over the course of February, March, and April 2003, the defendant's counsel withdrew at her request and she obtained a new attorney. She was arrested on April 8, 2003, for violating the terms of her bond when she left the state to remarry. According to Clark, the defendant's husband cancelled her April 9, 2003, appointment with Clark because she had been incarcerated and her bond was revoked. She made no further appointments with Clark.

On April 17, 2003, the trial court held a sentencing hearing and heard argument on the defendant's previously filed motion to reconsider. The defendant argued that she had complied with the conditions of her probation in every respect and that her probation had been revoked only because she had not admitted her involvement in the offense and had maintained her innocence. The State argued that the trial court should deny the defendant's motion to reconsider on the basis that she had failed to complete sex offender counseling recommended by the counselor, and it argued that the court should refrain from emphasizing whether or not she failed to admit her guilt.

The trial court denied the defendant's motion to reconsider and clarified its ruling of November 6, 2002, revoking the defendant's probation. The court stated that it based its revocation on Diamond-Bushue's reports that the defendant needed group therapy, a sex offender evaluation, and further individual therapy. The court explained that when it initially revoked her probation on November 6, 2002, these had not been completed and that they still had not been completed. The trial court stated:

> "Contrary to Mr. Courtney's argument I never took a position that Ms. McClellan had to be cured. I am not sure and I am certainly not an expert on sex offender treatment, but I think it would be the same as an alcoholic person or a person who has an addiction to drugs that maybe you can't cure somebody, but you can control it, and I never intended probation required that she be cured."

Prior to sentencing, the trial court considered the presentencing investigation report and addendum and heard argument on mitigation and aggravation factors. The defendant asked the trial judge on her own behalf that she be allowed to complete the counseling she had

begun with Clark prior to her incarceration. The trial court denied her request and sentenced her to five years in the Department of Corrections with credit for time previously served. The defendant appeals.

■ To revoke the defendant's probation, the State has the burden of demonstrating, by a preponderance of the evidence, that the defendant violated a condition of her probation. 730 ILCS 5/5—6—4(c) (West 2002). The trial court has discretion in deciding whether to revoke probation, and we will not disturb the court's ruling unless it is against the manifest weight of the evidence. *People v. Prusak*, 200 Ill. App. 3d 146, 149, 558 N.E.2d 696, 698 (1990). We find that the State did not carry its burden of demonstrating by a preponderance of the evidence that the defendant violated a condition of her probation, and as a result we find that the trial court's finding of a probation violation was against the manifest weight of the evidence.

On appeal, the defendant argues that the trial court improperly revoked her probation on the basis that she failed to complete sex offender counseling, because she consistently attended and fully participated in therapy for more than 2½ years and because the only reason she was discharged unsuccessfully was that she denied that the sexual abuse had occurred. She relies exclusively on *People v. Prusak*, 200 Ill. App. 3d 146, 558 N.E.2d 696 (1990). The State contends that the holding in *Prusak* has been limited by the Second District and is distinguishable from the present case. Although both parties rely heavily on *Prusak*, we conclude that the outcome of this case is determined not by *Prusak*, but by this case's unique facts.

■ Our review of this matter is simplified because those facts are largely undisputed. The defendant was sentenced to three years of probation, from July 21, 1999, until July 21, 2002. The defendant's probation order listed the conditions of probation in separate, numbered paragraphs. Paragraph 6 of the order required the defendant to seek employment and to support all lawful dependents. Paragraph 9 required the defendant to obtain a mental health evaluation and to complete the follow-up counseling recommended as a result of the evaluation and as directed by the probation officer. Paragraph 13 stated, "The defendant shall complete sex-offender counseling." Although the State takes the position that the defendant's failure to complete the follow-up counseling recommended as a result of her mental health evaluation constitutes a failure on the part of the defendant to complete sex offender counseling, we do not believe that her failure to follow those recommendations is in any way relevant to this appeal. The State's petition to revoke probation alleged that the defendant violated the terms of her probation by failing to support her lawful dependents and by failing to complete sex offender counseling.

It did not allege that the defendant had failed to complete the follow-up counseling recommended as a result of her mental health evaluation. Accordingly, the petition referenced paragraphs 6 and 13 of the probation order, not paragraph 9. Furthermore, as the record makes clear, the trial court's explicit reason for revoking the defendant's probation was "her failure to complete sex offender counseling," which also invokes paragraph 13 of the probation order. Accordingly, to determine whether the trial court erred in revoking probation, this court must consider the requirements of paragraph 13 of the probation order, not the requirements of paragraph 9.

Paragraph 13 states, in its entirety, "The defendant shall complete sex-offender counseling." Clearly, the key to deciding this case is determining what is meant by the verb "complete" in reference to the sex offender counseling ordered by the court. We conclude that the State reads that term too broadly in the context of this probation order. Although the trial court claimed it never took the position that the defendant had to be cured to fulfill the conditions of her probation but was revoking her probation because she had not followed certain "recommendations" made by the defendant's counselor, we conclude that unlike paragraph 9 of the order, which specifically requires the completion of recommended follow-up counseling, paragraph 13 contains no such language and, therefore, no such requirement. The stipulation of facts relative to the petition to revoke probation clearly and unequivocally states that, during the defendant's term of probation, the defendant "attended all sessions *required* and participated in the group sessions as *required*" (emphasis added) and "demonstrated appropriate effort on homework assignments and contributed to group discussions." In light of the defendant's compliance with all the *requirements* demanded of her during her term of probation, we cannot conclude that the defendant's failure to follow up on the *recommendations* of the defendant's counselor that the defendant needed further group and individual therapy and a sex offender evaluation to determine the level of risk she posed to children constitutes a failure to complete sex offender counseling sufficient to justify revoking the defendant's probation and incarcerating her for five years. The State had three years in which to develop the requirements of the defendant's probation and to clearly and explicitly explain those requirements to the defendant. During that time, the defendant complied with all the requirements the State developed and did everything she had been asked to do, with the exception of admitting guilt. The fact that the defendant may not be cured at the end of her term of probation is irrelevant, and the fact that her counselor made further recommendations for treatment does not mean that the defendant did not complete the sex offender counseling required by her probation order.

In the everyday use of our language the verb "complete" is a somewhat open-ended one, with dictionary definitions running the gamut from "to make whole, entire, or perfect" to "end after satisfying all demands or requirements." Webster's Third New International Dictionary 465 (1993). In law, however, concreteness is required, and we conclude that by attending and participating in all the requirements of her probation, the defendant "completed" her counseling as required by her probation order. With regard to sex offender counseling, following up on additional recommendations made by her counselor at the conclusion of her term of probation was optional, not required.

The position of the State seems to be that "complete" means "to make whole, entire, or perfect," the trial court's protestations that it did not require the defendant to be cured notwithstanding. However, adopting such a position creates a situation, such as that present in this case, where a defendant would either have to voluntarily choose to extend the term of the defendant's probation and remain in some sort of sex offender counseling noncompletion limbo indefinitely, even when that defendant has participated in every activity required of the defendant during the initial probation term but has simply failed to follow up on additional recommendations, or face incarceration. It has long been the law of Illinois that an offender on probation must be reasonably informed in writing of what conduct is expected of the offender. *People v. Saucier*, 221 Ill. App. 3d 287, 291-92, 581 N.E.2d 852, 855-56 (1991). In the case at bar, the defendant did everything she had been asked to do, with the exception of admitting guilt. It is simply not appropriate for the State to now claim that she failed to complete the requirements of her probation.

As discussed above, to revoke the defendant's probation, the State had the burden of demonstrating, by a preponderance of the evidence, that the defendant failed to complete sex offender counseling. For the reasons stated above, we conclude that the State did not meet its burden with regard to this particular probation order and this particular defendant's conformity thereto. Accordingly, we conclude that the trial court erred in revoking the defendant's probation, and we reverse the ruling of the trial court.

Reversed.

JUSTICE KUEHN, specially concurring:

Because I do not believe that the State can transform counseling needs beyond the probationary period into a violation of a probationary condition that requires the completion of sex offender counseling

and because I am convinced that this defendant, having satisfied the sex offender counseling provision of probation, was not obliged to seek punishment in excess of the sentence she successfully served, I specially concur.

JUSTICE CHAPMAN, dissenting:

I respectfully dissent. The majority takes the view that the individual counseling recommended by the defendant's therapists was optional and not required by the probation order and that the defendant's failure to follow their recommendations does not mean that she did not complete sex offender counseling. I disagree. The probation order in this case required the defendant to obtain a mental health assessment and to complete the follow-up counseling recommended by the assessment. The order also required her to complete sex offender counseling. Kiel recommended in her assessment that the defendant seek continued individual therapy and sex offender treatment. Diamond-Bushue recommended in her progress report and discharge summary that the defendant obtain individual therapy with a therapist specializing in female sex offenders and participate in a sex offender evaluation and polygraph examination to assess her level of risk to children. The record is void of evidence demonstrating that the defendant followed through with these recommendations, and it is clear that her failure to do so formed the basis for the trial court's decision in this case.

Unlike the majority, I find it noteworthy that the defendant had not requested an extension of the term of her probation to complete counseling in accordance with her therapists' recommendations at the time the trial court revoked her probation. Almost six months passed between the time her probation was revoked and the time of her sentencing. The trial court even continued one hearing at her request specifically to afford her another opportunity to complete additional counseling, testing, and evaluation. This did not happen.

Thus, I would find that the record supports the trial court's finding that the defendant violated her probation and that the judgment is not against the manifest weight of the evidence. For these reasons, I respectfully dissent from the majority's opinion reversing the ruling of the trial court.