# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Terry H.*, 2011 IL App (2d) 090909

---

| | |
|---|---|
| Appellate Court Caption | *In re* TERRY H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Terry H., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2–09–0909 |
| Filed | June 7, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's order revoking respondent's supervision imposed following his adjudication of delinquency for aggravated criminal sexual abuse was affirmed, since there was sufficient evidence that he failed to "participate" in counseling, regardless of his claims that it is difficult for teens to discuss sexual matters in a group setting and that his mental health issues made such discussions even more difficult, especially when there was evidence that he was capable of participating and simply chose not to, and, therefore, the trial court's determination that the State met its burden of proof on the issue of revoking respondent's supervision was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 06–JD–67; the Hon. K. Patrick Yarbrough, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Scott Jacobson, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Hutchinson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Terry H. appeals from an order revoking his supervision following his adjudication of delinquency for aggravated criminal sexual abuse (720 ILCS 5/12–16(c)(2)(i) (West 2006)). He contends that there was insufficient evidence that he violated the terms of his supervision. We affirm.

¶ 2                    I. BACKGROUND

¶ 3    In February 2006, a delinquency petition was filed against Terry, alleging that he committed domestic battery. In March 2006, he was placed on probation, ordered to perform public service, and ordered to pay court costs. An order that he serve 30 days in detention was stayed.

¶ 4    On August 14, 2006, a supplemental delinquency petition was filed, alleging that Terry, who was 15 at the time, committed aggravated criminal sexual abuse by touching his penis to the buttocks of a minor under 9 years of age. Under an agreement between the parties, Terry admitted the charge and was sentenced to two years' supervision, ordered to cooperate and participate in counseling, and ordered not to have unsupervised contact with minors under 12 years of age.

¶ 5    On July 2, 2008, a petition to revoke Terry's supervision was filed, alleging that Terry had gone to Great America amusement park unsupervised and that he was not cooperating with court-ordered treatment. On May 11, 2009, a hearing was held.

¶ 6    At the hearing, Jeffrey Sundberg, a social worker who counseled Terry, testified. Sundberg began counseling Terry in October 2007 on an individual basis. He then directed Terry to take part in a weekly sex-offender counseling group to further address issues that caused Terry to sexually act out. Based on a polygraph, Sundberg believed that there were matters not being addressed individually and that, by being in both group and individual

sessions, Terry might be in a better position to make progress. In June 2008, Sundberg discharged Terry from the group. Sundberg testified that Terry was willing to talk about general issues but, when the topic became focused on his offender-specific concerns, Terry would "shut down," would not proceed, and would not explore the issues. In Sundberg's opinion, Terry was not participating in the group counseling sessions. Sundberg stated that participants were expected to come prepared with assignments for the discussion and respond to questions, and that Terry had a pattern of not participating. Sundberg discussed the problem with Terry more than once before discharging him, but Terry's participation did not improve. On cross-examination, Sundberg stated that he was aware that Terry was diagnosed with ADHD, was bipolar, and had fetal alcohol syndrome. Sundberg agreed that some kids do better in group sessions than others.

¶ 7 Michelle Eaton, Terry's probation officer, testified that she observed some of the group sessions, during which Terry would state that he did not want to discuss matters. Eaton said that, on many occasions, Sundberg then discussed with Terry that Terry had to talk about things or risk being dismissed from the group. Eaton testified that she also transported Terry to individual sessions and that they would discuss Terry's participation. Many times, Terry would not say anything, and he would put his head down and refuse to talk. After discussing with Terry what would happen if he did not participate, his participation improved somewhat in that he would attempt to give feedback to other members of the group, but he did not offer much in terms of his own treatment. Eaton stated that Terry was not working on his own issues, in violation of part of the requirement of working with the group. On cross-examination, Eaton agreed that it is extremely difficult for young teens to talk about their sexual dynamics in front of a group. She also was aware of Terry's mental health issues but stated that she had no reason to believe that he was unable to comply with the requirement that he participate in counseling.

¶ 8 Terry's mother testified about Terry's mental health issues and to various counseling that he had outside of his sex-offender treatment. When she was asked if Terry was assertive and how Terry behaved in family counseling, the State objected based on relevancy. The objections were sustained.

¶ 9 In regard to the trip to Great America, Terry had gone to the park as part of an organized trip with a group of students in his age group, but it was a regular park day and children of all ages were present. Sundberg testified that he discussed the trip with Terry, who told Sundberg that there was a chaperone and that the chaperone was unaware of Terry's status as a sex offender. Likewise, Eaton testified that she discussed the trip with Terry, who told her that the person supervising his group was not aware of why he was on supervision. Terry told Eaton that his mother was there but that he was not part of her group. He said that he went on rides and was not supervised in the restroom. Terry also told Eaton that his mother called him throughout the day but that he did not answer his cell phone.

¶ 10 Terry's mother testified that there were no children on the trip under the age of 12 and that there were about eight chaperones. She said that Terry was part of her group. The park itself was open to the public, and there were children of all ages there. She and Terry were at the park from about 10 a.m. to 6 or 7 p.m. She testified that she was not with Terry when he went on rides but that she was sitting on a bench waiting for him. She knew that he was

on a ride, but she could not always see him while it was operating or while he was waiting in line. Terry's mother did not go to the restroom with him. Terry was also out of her sight when he went into the arcade, but she stayed right outside the door. She said that, if she wanted, she could look in and see him at all times. Terry's mother testified that she found out that Terry's cell phone was turned off when she tried to call him after she went to the restroom and could not find him when she came out. Terry then came out of the restroom, showed her that the phone was turned off, and turned it on.

¶ 11    Terry argued that the State failed to show a violation of his supervision by a preponderance of the evidence. The trial court found that Terry violated the terms of his supervision. The court stated that it was well known that an amusement park is not limited to people over 12 years of age and that Terry was outside his mother's presence while at the park. The court also found that Terry purposely refused to participate in counseling. Accordingly, the court revoked Terry's supervision, he was sentenced to probation, and he was required to register as a sex offender. Terry moved for reconsideration, arguing that the State failed to prove that he violated the terms of his supervision. The motion was denied, and he appeals.

¶ 12                                    II. ANALYSIS

¶ 13    Terry argues that the trial court lacked sufficient evidence to revoke his supervision, because there was no evidence that he had any unsupervised contact with children under the age of 12 and because there was no proof that his failure to participate in counseling was willful in light of his mental health issues.

¶ 14    Minors in delinquency cases are entitled to the same due process protections as adults who face criminal charges. See 705 ILCS 405/5–101(3) (West 2008); *In re Westley A.F.*, 399 Ill. App. 3d 791, 795 (2010). "On a State's motion to terminate supervision, the State has the burden of showing a violation of supervision by a preponderance of the evidence." *People v. McGuire*, 216 Ill. App. 3d 705, 709 (1991). A proposition is proved by a preponderance of the evidence when the proposition is more probably true than not true. *People v. Drake*, 131 Ill. App. 3d 466, 472 (1985). The State may meet its burden using circumstantial evidence. See *People v. Love*, 404 Ill. App. 3d 784, 788 (2010); *People v. Kane*, 136 Ill. App. 3d 1030, 1034 (1985) (allowing revocation of probation based on circumstantial evidence). "In evaluating whether the State met its burden, the trial judge is free to resolve inconsistencies in the testimony and to accept or reject as much of each witness's testimony as the judge pleases." *Love*, 404 Ill. App. 3d at 787. "A trial court's determination to revoke supervision will not be disturbed unless it is against the manifest weight of the evidence." *McGuire*, 216 Ill. App. 3d at 709. "A finding is against the manifest weight of the evidence only if the opposite result is clearly evident." *Love*, 404 Ill. App. 3d at 787. Thus, even where the State's evidence is slight, we must affirm the revocation of supervision as long as the opposite conclusion is not clearly evident. See *id*. (applying this proposition to revocation of probation).

¶ 15    Terry relies primarily on two cases, *People v. Prusak*, 200 Ill. App. 3d 146 (1990), and *People v. McClellan*, 353 Ill. App. 3d 1027 (2004). In *Prusak*, the defendant pleaded guilty

to one count of aggravated criminal sexual abuse and was sentenced to a three-year term of probation. As a condition of his probation, the court ordered the defendant to undergo a psychiatric evaluation and cooperate with any treatment and recommendation made by the evaluating agency. The State filed a petition to revoke the defendant's probation because his treatment was discontinued "due to his lack of cooperation." (Internal quotation marks omitted.) *Prusak*, 200 Ill. App. 3d at 148. The State contended that the defendant did not cooperate because he continually denied any specific memory of the offense. The trial court revoked the defendant's probation and we reversed.

¶ 16 We stated in *Prusak* that it was clear that the defendant submitted to an evaluation, attended every counseling session, and did everything that was required of him in the counseling sessions. The only thing that he did not do was accept responsibility for his sexual misconduct, and this denial was caused by mental disabilities that included his inability to remember the misconduct. Thus, he sufficiently cooperated with treatment. *Id*. at 149-50.

¶ 17 Similar to *Prusak*, the Fifth District in *McClellan* held that probation revocation was improper when the defendant had attended and participated in all of her group sessions, even if she did not get the full benefit of her counseling because she maintained her innocence. There, the court focused on the fact that the defendant had been ordered only to "complete" counseling. *McClellan*, 353 Ill. App. 3d at 1034-35.

¶ 18 We have been reluctant to expand the application of the ruling in *Prusak*. See *People v. Taube*, 299 Ill. App. 3d 715, 723 (1998); *McGuire*, 216 Ill. App. 3d at 709. For example, in *McGuire*, the defendant's supervision was revoked because he continually denied committing the offense, but he did not have the memory problems seen in *Prusak*. In refusing to expand *Prusak* to cover the facts of that case, we noted that, in placing a defendant on supervision, a court may order reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant. We further noted that " 'although the defendant's fault is, in most cases, of great importance in determining whether the conditions of probation have been violated, circumstances beyond the defendant's control may provide an adequate basis for probation revocation where such circumstances frustrate the fundamental purpose or reason for the imposition of a sentence of probation.' " *McGuire*, 216 Ill. App. 3d at 710 (quoting *People v. Davis*, 123 Ill. App. 3d 349, 354 (1984)). We determined that the defendant's own conduct in failing to admit involvement in the offense frustrated the development of a treatment plan and that the trial court's decision to revoke supervision was not against the manifest weight of the evidence. *Id*.

¶ 19 Likewise, in *Taube*, we observed that "[a]lthough a court cannot order a sex offender to be successfully treated, a defendant ordered to undergo treatment must actively participate and cannot refuse to participate in his own treatment simply because he disagrees with the methods used." *Taube*, 299 Ill. App. 3d at 723. Thus, we stated that "[o]ur holding in *Prusak* protects only those offenders who have honestly, sincerely, and completely cooperated in a treatment program, yet have nonetheless failed to recover. It does not, as in this case, provide a shield for those offenders who object to the treatment ordered by the court and refuse to cooperate fully." *Id*.

¶ 20 Here, there was sufficient evidence that Terry failed to "participate" in counseling. Terry

refused to take part in discussions at counseling sessions, even when the consequences of that failure were explained to him. Terry points to testimony that it is difficult for teens to discuss sexual matters in a group setting, and he contends that his mental health issues made it even more difficult. However, there was also evidence that Terry was capable of participating and simply chose not to. That doing so would have been difficult for him does not fall under the facts of *Prusak*, where the defendant could not take responsibility because of memory problems but otherwise participated in counseling. Accordingly, the trial court's determination that the State met its burden of proof was not against the manifest weight of the evidence and the court properly revoked Terry's supervision.

¶ 21 Terry also alleges that the trial court erred by not allowing testimony about his assertiveness or how he behaved in family counseling sessions, arguing that it would have shown that he did not willfully refuse to participate. The State, however, was required to show only that Terry failed to participate. There was no element of willfulness to that question. See *People v. Konwent*, 405 Ill. App. 3d 794, 796 (2010). Accordingly, the court did not err in sustaining objections to that evidence.

¶ 22 Terry also argues that the court erred when it found that he violated the terms of his supervision when he went to Great America. Because we determine that the court did not err when it determined that Terry violated the terms of his supervision by failing to participate in counseling, we need not determine whether he also violated his supervision when he went to Great America.

¶ 23 III. CONCLUSION

¶ 24 The trial court's finding that the State sufficiently proved that Terry violated the terms of his supervision was not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

¶ 25 Affirmed.